**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTOPHER MURDOCK, :<br><br>Plaintiff, :<br><br>v. :<br><br>BOROUGH OF EDGEWATER; :<br>BOROUGH OF EDGEWATER POLICE :<br>DEPARTMENT; DONALD MARTIN, :<br>Individually and in his official capacity, :<br>as Chief of Police for the Borough of :<br>Edgewater; THOMAS BREEN, Individually :<br>and in his official capacity as Police Officer :<br>for the Borough of Edgewater; JESSE :<br>HOLOWACZ, Individually and in his :<br>official capacity as a police officer for the :<br>Borough of Edgewater; Detective :<br>Lieutenant DONALD SKIDMORE; :<br>JOHN DOES 1-15 (fictitious names), :<br>individually and in their official capacities :<br>as Police Officers for the BOROUGH OF :<br>EDGEWATER, :<br>  :<br>Defendants. : | Civil Action No. 08-2268 (MCA)<br><br>**OPINION** |

**ARLEO, U.S.M.J.**

      This matter comes before the Court upon the motion of defendants Borough of Edgewater

("Edgewater"), Borough of Edgewater Police Department ("Police Department"), Chief of Police

Donald Martin ("Chief Martin"), Sergeant Thomas Breen ("Breen"), Patrolman Jesse Holowacz

("Holowacz"), and Detective Lieutenant Donald Skidmore ("Skidmore") (sometimes collectively

"defendants") for summary judgment, pursuant to FED. R. CIV. P. 56, (Dkt. Entry 34), on all of

plaintiff Christopher Murdock's ("plaintiff") claims.[1]  Defendants also move to dismiss

Skidmore, a named defendant in the caption of the complaint.  Finally, defendants move for

summary judgment on plaintiff's claims against the Police Department because it is not a proper

defendant.  Also before the Court is plaintiff's cross-motion for partial summary judgment on his

section 1983 excessive force claim (count one). (Dkt. Entry 41).

      This Court held oral argument on September 9, 2011, and reserved ruling from the

bench.[2]  Having considered the parties' submissions, their positions during oral argument, for

good cause shown, and for the reasons set forth herein, defendants' motion for partial summary

judgment is **GRANTED, IN PART, AND DENIED, IN PART**, and plaintiff's cross-motion for

partial summary judgment on his section 1983 excessive force claim (count one) is **DENIED**.

## I.  <u>BACKGROUND</u>

      On May 9, 2008, plaintiff filed this civil rights action against defendants, arising from

circumstances surrounding his arrest two years earlier on May 12, 2006.  On the evening of May

12, 2006, officers Breen and Jesse Holowacz responded to a call at 40 Grand Cove Way,

claiming that a disturbance had occurred at the residence of plaintiff and his wife Joanne

Murdock ("Ms. Murdock").   The following facts are not in dispute.

      Plaintiff, along with Ms. Murdock; Elizabeth Balcar ("Balcar"), plaintiff's sister-in-law;

and Jerry Teplitz ("Teplitz"), Balcar's boyfriend, were socializing inside the residence when

tension developed between plaintiff, Balcar, and Teplitz. (Pl. Dep. Tr. at 13:22-24; 17:8-17, att.

---

[1] Defendants do not specifically address plaintiff's assault and battery claim (count two). Therefore, the motion is one for partial summary judgment.

[2] On January 21, 2009, the parties consented to the undersigned's jurisdiction.

to Harry Norton Cert., as Exh. N).  By his own admission, plaintiff began yelling at Balcar and

Teplitz, smashed a glass against a wall, smashed a cake with a knife, and threw the knife at a

wall.  (*Id.* at 18:1-9; 20:3-9, 22-24).  Plaintiff then moved towards Teplitz, but Ms. Murdock

stepped in between plaintiff and Teplitz.  (*Id.* at 20:25 - 21:1-13; Pl. Rule 56.1 St., at ¶ 13; Breen

Patrol Report, att. to Norton Cert. as Exh. E).

Teplitz and Balcar retreated onto the back porch while plaintiff walked upstairs to the

second floor of his house.  (Pl. Dep. at 22:7-14).  Once plaintiff was upstairs, Ms. Murdock

invited Teplitz and Balcar back into the house to retrieve their belongings.  Plaintiff walked back

downstairs and resumed yelling at Teplitz and Balcar.  Teplitz and Balcar again fled the house,

but this time outside the front door.  (Ms. Murdock Dep. at 43:5-9, 45:2-7, 45:1 - 46:20, att. to

Norton Cert. as Exh. O; Pl. Dep. at 26:10-14, 29:5-19).

According to Ms. Murdock, Teplitz called the police.  (Ms. Murdock Dep. at 44:2-25).

When Breen and Holowacz arrived at 40 Grand Cove Way, they were met by Balcar and Teplitz.

Ms. Murdock exited the front door of her house, and observed Breen and Holowacz on the front

porch, as well as Teplitz and Balcar in the parking lot near their car.  (Ms. Murdock Dep. at

47:20-24, 48:1-10).  Ms. Murdock advised Breen and Holowacz that there had been a

"disturbance" involving plaintiff at their home and that he was "upset."  (*Id.* at 54:1-24).  Ms.

Murdock advised the officers that she intended to leave the house for the night with Balcar and

Teplitz.  (*Id.* at 54:12 - 55:25; Breen Patrol Report).  She also advised them that she had to re-

enter the residence to obtain some belongings.  (Pl. Rule 56.1 St., at ¶ 16; Breen Patrol Report).

Breen asked Ms. Murdock if she wanted him to escort her into the house.  Ms. Murdock advised

him that it would not be necessary.  (Pl. Rule 56.1 St., at ¶ 16A; Ms. Murdock Dep., at 113:16 -

113:25). Breen advised Ms. Murdock to keep the front door of the residence open, while she was in the house, for her safety. (Pl. Rule 56.1 St., at ¶ 17).

Breen and Holowacz approached the front door of the residence with Ms. Murdock. (Ms. Murdock Dep., at 57:9-20). Plaintiff answered the door, and Breen requested plaintiff provide identification. (Pl. Dep. at 49:15-22; 53:1-53:9; Pl. 56.1 St., at ¶ 19). Plaintiff responded by telling the police officers to "get those freeloaders out of here." (Pl. Dep., at 52:6-12; Officer Breen Dep. Tr. at 76:12-19, att. to Norton Cert. as Exh. Q).

The parties' version of events diverge at this point. According to plaintiff, at no time did Ms. Murdock, Breen or Holowacz ever tell him that the door must remain open. (Pl. Dep., at 52:20-25 - 53:1-9; Pl. 56.1 St., at ¶¶ 17A, 18B). Ms. Murdock never advised plaintiff that she was leaving the residence for the night. (Pl. Dep., at 53:10-15; Pl. 56.1 St., at ¶ 18A). Although Ms. Murdock directed plaintiff to keep the front door open, Ms. Murdock notes that plaintiff never acknowledged whether he heard her instruction. (Ms. Murdock Dep., at 58:5-17).

When Ms. Murdock entered the residence, she walked passed plaintiff and up the stairs to the living area of the home. (*Id.* at 58:24-25 - 59:1-2; 61:22-24). As Ms. Murdock walked past plaintiff, he heard her say that she would return shortly; yet, plaintiff did not hear her say anything else because the police began speaking simultaneously to him. (Pl. Dep. at 52:1-25 - 53:1-25; 55:2-8). Plaintiff remained at the front door with Breen and Holowacz, who asked him for identification. (*Id.* at 60:4-24).

While there is no dispute that plaintiff attempted to close the front door *after* Ms. Murdock entered the house, plaintiff asserts he was trying to close the door to prevent their cats from escaping as it was his and his wife's habit. (Ms. Murdock Dep. at 68:1-25 - 69:1-25; Pl.

56.1 St., at ¶ 20A). When plaintiff tried to close the door with his right hand, neither Breen's foot nor leg were in the door jab. (Pl. Dep. at 53:21-25 - 54:1-9; Pl. 56.1 St., at ¶ 21A). Rather, as plaintiff tried to close the door, the officers started to scream and "charged the door." (Pl. Dep. at 56:3-56:19). The police burst into his home in an explosive manner, with a night stick raised at face level. (Pl. 56.1 St., at ¶ 21B). Plaintiff was knocked backwards onto the steps behind him. (Pl. Dep. at 56:22-24). Plaintiff raised his hand to block himself, but was struck on the left side of his face with the night stick. (Pl. Dep. at 56:25 - 57:1-2; 58:12-20). Plaintiff tasted blood and felt a tooth in his mouth. (Pl. Dep. at 59:6-8; Pl. 56.1 St., at ¶ 21B). He retreated to the top of the stairs, leading to the entrance of his home. (*Id.* at 57:1-12).

Once inside his home, plaintiff was tackled by Holowacz. Breen then handcuffed plaintiff in the dining room. (Pl. Dep. at 57:14-17, 58:1-6; Ms. Murdock Dep., at 66:1-5). It is undisputed that plaintiff was compliant after being placed into custody. (Pl. 56.1 St., at ¶ 25; Breen Dep. at 91:20-23). Yet, according to plaintiff, after he was handcuffed face down on the floor, one of the officers, later determined to be Holowacz, placed a night stick across his throat and pushed his head down preventing plaintiff from breathing. (Pl. Rog. Ans. # 3 att. to Norton Cert., as Exh. M). Plaintiff tried to scream out: "I can't breath. I can't breath." (Ms. Murdock Dep., at 72:23-25 - 73:1-11). Holowacz then placed his knee into plaintiff's ribs, causing them to crack. (Pl. Rog. Ans. #3; Ms. Murdock Dep. at 73:12-17). Ms. Murdock approached Holowacz to calm him down, touching him on the back. (Ms. Murdock Dep. at 73:18-25). Holowacz yelled for her to remove her hands from him, or he would take her "down to the station too." (*Id.*)

Breen and Holowacz then lifted plaintiff by his cuffed hands, causing injury to his right

shoulder.  Plaintiff screamed out in pain, and Ms. Murdock pleaded with the officers not to hurt

plaintiff.  (Pl. Rog. Ans. #3.  Ms. Murdock Dep. at 144:15 - 145:1).  Plaintiff complained that the

handcuffs were too tight, and his fingers were becoming numb.  (Pl. Rog. Ans. #3).  Breen and

Holowacz ignored his complaints.  (*Id.*)  Holowacz told plaintiff that nobody cared about his

pain, and that he had better get used to it.  (Pl. Dep. at 65:3-8).

Defendants detail a much different account.  According to Officer Breen, plaintiff

appeared visibly agitated when he opened the front door, demanding that the "freeloaders" leave.

(Breen Dep. at 74:1-17, 75:1-8).  Plaintiff then closed and locked the door with only himself

inside.  (*Id.* at 76:20-23).  Breen and Ms. Murdock attempted to convince plaintiff to open the

door in order to speak with them and resolve the situation.  (*Id.* at 76:25 - 77:1-3, 16-18).

Plaintiff opened the door, and Breen explained that Balcar and Teplitz had to retrieve their

belongings.  (*Id.* at 77:23-25 - 78:1-3).  As plaintiff did not want Balcar and Teplitz to re-enter

the house, Ms. Murdock volunteered to retrieve their belongings.  (*Id.* at 78:4-6).  Before Ms.

Murdock re-entered the house, Breen requested permission to accompany Ms. Murdock into the

house to retrieve the belongings and to investigate any damage to the interior of the house.  (*Id.* at

78:1-17).  Plaintiff, however, denied Breen's request.  (*Id.*)

Ms. Murdock alone entered the residence, while Breen spoke with plaintiff at the front

door.  (*Id.* at 80:2-4).  Breen ordered plaintiff to keep the door open while Ms. Murdock was

inside in order to monitor everyone's safety.  (*Id.* at 80:3-4, 14-16; Breen Patrol Report).  Breen

also explained to plaintiff the reason for the officers' presence and asked plaintiff for

identification needed to complete the police report.  (*Id.* at 80:5-11).

As Ms. Murdock began to climb the stairs of the residence, she told plaintiff that she too

was leaving for the night. (*Id.* at 80:17-19). Plaintiff immediately screamed, "we're done," and motioned to close the front door. (*Id.* at 80:19-20). Breen used his hand to hold the door open while advising plaintiff to keep the door open. (*Id.* at 80:20-22). Plaintiff again said, "we're done," and attempted to push the door closed with his shoulder. (*Id.* at 80:22-23). Breen then wedged himself between the door and its frame to prevent plaintiff from closing the door. (*Id.* at 81:1-18). In an effort to defuse the situation, Breen tried to get plaintiff to relax and back away from the door so that Breen could see where Ms. Murdock was in relation to plaintiff. (*Id.* at ¶ 82:5-10).

Plaintiff reached through the door and struck the left side of Breen's face. (*Id.* at 81:19-20, 82:1-3). Breen, along with Holowacz, pushed the door open, and Breen entered the residence. (*Id.* at 82:21-23). Following plaintiff's assault on Breen, both Breen and Holowacz attempted to take plaintiff into custody with "physical and mechanical force." (Holowacz Dep. at 121:16-126:22). A struggle between the police officers and plaintiff ensued in their attempt to handcuff plaintiff, who resisted. (*Id.* at 83:1-6; 84:11-25 – 86:1-17). During the struggle, Breen was struck for a second time in the face, knocking off his glasses. (*Id.* at 83:6-8). According to Breen, at no time did either officer place a baton across the throat of plaintiff. (*Id.* at ¶ 87:24 - 88:1). Yet, Breen admitted to using the baton across plaintiff's back and shoulders. (*Id.* at 88:1-2). Breen asserts that while plaintiff was face down on the floor being handcuffed, the baton was appropriately used to hold plaintiff flat against the ground. (*Id.* at 88:4-10).

Breen disputes having ignored plaintiff's complaints about the tightness of the handcuffs around his wrists. (*Id.* at 90:15-25 - 91:1-8). According to Breen, he checked the handcuffs which he confirmed were not too tight. (*Id.* at 91:24-25 - 92:1-2). According to Holowacz,

"everybody complains their handcuffs are on too tight." (Holowacz Dep. at 130:14-15).

Additionally, the following facts are not in dispute. As a result of the events of May 12, 2006, plaintiff was charged with aggravated assault in violation of N.J. STAT. ANN. § 2C:12-1b, resisting arrest and assaulting a police officer in violation of N.J. STAT. ANN. § 2C:29-2a. (Criminal Compl., att. to Norton Cert., as Exh. I). Plaintiff was released on bail, but Ms. Murdock requested a restraining order be entered against plaintiff. (Temporary Restraining Order, att. to Norton Cert. as Exhs. J& K; NJ Judiciary Bail Recognizance, att. to Norton Cert., as Exh. J). A restraining order was issued, but was subsequently dismissed at the request of Ms. Murdock. (Order of Dismissal, att. to Norton Cert. as Exh. L).

Following the filing of the criminal complaint against plaintiff, he was considered for and agreed to participate in New Jersey's Pre-Trial Intervention ("PTI") program. (Def. 56.1 St. at ¶ 71; Pl. 56.1 St. at ¶ 71). Plaintiff was represented by counsel in the underlying criminal complaint. (Def. 56.1 St. at ¶ 72). Plaintiff entered PTI without pleading guilty. (Pl. 56.1 St. at ¶ 72). As a condition of PTI, plaintiff had to report to probation and complete anger management treatment. (Def. 56.1 St. at ¶ 73). Plaintiff accepted the PTI terms and successfully completed the program. His criminal record was then expunged. (Def. 56.1 St. at ¶ 74; Pl. 56.1 St. at ¶ 74).

According to plaintiff, as a result of injuries allegedly sustained in the course of the arrest, plaintiff sought medical treatment from several doctors. (Richard Luzzi Cert., at Exhs. A-E). Among other courses of treatment, plaintiff underwent orthopedic surgery on his right wrist. (*Id.* at Exh. E).

In the instant action, plaintiff asserts several claims that include:

**Count One:** False/unlawful arrest and excessive force in violation of the Fourth

8

and Fourteenth Amendment rights as guaranteed under 28 U.S.C. § 1983 against
Breen and Holowacz;

**Count Two:** State law claims for assault and battery against Breen and Holowacz;

**Count Three:** Vicarious liability against Chief Martin, Edgewater, and the Police
Department under the doctrine of respondeat superior;

**Count Four:** A *Monell* claim for federal constitutional violations against
Edgewater, the Police Department, and Chief Martin seeking monetary damages;
and

**Count Five:** A *Monell* claim, under a negligence theory of liability, against
Edgewater, the Police Department, and Chief Martin seeking prospective
injunctive relief.[3]

## II.   **MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Defendants assert that they are entitled to summary judgment on plaintiff's claims for

false/unlawful arrest and excessive force in violation of his Fourth and Fourteenth Amendment

rights as guaranteed under section 1983. As to plaintiff's false arrest claim, defendants contend

that plaintiff's participation in the PTI program is not a favorable outcome of the criminal matter.

Thus, the false arrest claim fails as a matter of law. As to plaintiff's excessive force claim,

defendants assert that the claim fails because Holowacz and Breen are entitled to qualified

immunity; and there are no facts on which a jury can conclude that Holowacz and Breen used

excessive force in arresting plaintiff. As to plaintiff's claims against Edgewater and Chief

Martin, defendants contend that there is no vicarious liability against these two defendants under

the doctrine of respondeat superior, and there is no direct liability against them either.

---

[3] Although count five of the Complaint appears to assert a negligence claim only against
Breen and Holowacz, during oral argument, plaintiff's counsel clarified that Count Five is a
*Monell* claim for prospective injunctive relief only against Edgewater, the Police Department,
and Chief Martin.

Defendants also move to dismiss Detective Lieutenant Donald Skidmore a named defendant in the caption of the complaint, but against whom plaintiff does not specifically assert any claims. Finally, defendants move for summary judgment on plaintiff's claims against the Edgewater Police Department because it is not a proper defendant.

With respect to plaintiff's partial summary judgment motion on his excessive force claim, he argues that defendants' motion for summary judgment should be denied because Holowacz and Breen are not entitled to qualified immunity, and there is a factual dispute about the legality of the arrest.  Yet, plaintiff contends that he is entitled to summary judgment on his excessive force claim arising from Holowacz's and Breen's conduct <u>after</u> plaintiff was arrested and handcuffed because there is no genuine issue as to any material fact.

III.   **ANALYSIS**

   A.   **Legal Standard**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cascara v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

10

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). On the other hand, "[i]f the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006).

### B.    Count One: Unlawful Arrest

Defendants contend that plaintiff's section 1983 unlawful arrest claim is barred by the principles enunciated by the Supreme Court in *Heck v. Humphrey*, the Third Circuit in *Gilles v. Davis*, and this Court in *Hendrix v. City of Trenton*. According to defendants, when read together, these court decisions confirm that a finding here in plaintiff's favor on his unlawful arrest claim would negate the validity of his convictions on his criminal aggravated assault and resisting arrest charges. Defendants contend that the Supreme Court and Third Circuit disfavor such a result.

In support of their contention, Defendants assert that although plaintiff did not plead guilty to either state criminal charge, by entering into the PTI program, plaintiff "necessarily

11

stipulated" to a finding of probable cause to arrest him.  As such, plaintiff cannot not challenge

the probable cause finding by pursuing his unlawful arrest claim.  Thus, defendants contend that

plaintiff's admission into the PTI program is sufficient to bar his section 1983 unlawful arrest

claim.

  In opposition, plaintiff does not squarely address the preclusive effect, if any, that his

consent to entering PTI has on his unlawful arrest claim.  Nonetheless,  under FED. R. CIV. P.

56(e)(2), an unopposed motion for summary judgment may be granted only if deemed

appropriate, and thus, this Court will consider the merits of defendants' arguments supporting

entry of summary judgment.  *See Anchorage Assocs. v. Virgin Islands Bd. Of Tax Rev.*, 922 F.2d

168, 175 (3d Cir. 1990); *see also Morrison v. Phillips*, 2008 WL 4308215, * 5 (D.N.J. Sept. 16,

2008).

  There is no dispute that plaintiff did not plead guilty to the charges.  Rather, as discussed

below, the threshold issue is whether plaintiff's participation in the PTI program constitutes a

"favorable termination" of the underlying charges, or is considered a valid undisturbed

conviction of the criminal charges.  In other words, the Court must first determine whether

plaintiff's completion of the PTI program bars plaintiff's section 1983 false arrest claim under

*Heck*.  If completion of the PTI program does not constitute a "favorable termination," the Court

must next determine whether plaintiff's success on his section 1983 unlawful arrest claim would

necessarily invalidate his underlying conviction for aggravated assault and resisting arrest under

*Heck*.

  1. *Whether the PTI Program Constitutes A "Favorable Termination"*

In the context of a section 1983 malicious prosecution claim, the Supreme Court in *Heck*

12

noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). The Court held, in relevant part, that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed . . ., expunged . . . [or] declared invalid . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; it if would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87. *See Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005) (reiterating holding in *Heck* that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reserved on direct appeal or impaired by collateral proceedings).

In *Gilles*, the Third Circuit, interpreting *Heck*, expanded the bar against section 1983 claims to guilty pleas and/or entry into Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") Program. *See Gilles*, 427 F.3d at 201. *See also Fuchs v. Mercer County*, 260 F. App'x 472, 474 (3d Cir. 2008). The Court analyzed the preclusive effect of the plaintiff's participation in the ARD program for his disorderly persons charge on the prosecution of his subsequent section 1983 First Amendment claim. The Third Circuit noted that:

> 'acceptance into [the] ARD program is not intended to constitute a conviction,' but 'it may be statutorily construed as a conviction for purposes of computing sentences on subsequent convictions.' By

13

> entering the ARD program, the defendant waives his right to prove
> his innocence, but at the same time, does not admit guilt.

*Id.* at 209 (internal quotation omitted).

Finding that the Supreme Court's reasoning in *Heck* applies with equal force in the ARD

context, the Third Circuit in *Gilles* concluded:

> [The plaintiff's] underlying disorderly conduct charge and his §
> 1983 First Amendment claim require answering the same question
> – whether [plaintiff] Petit's behavior constituted protected activity
> or disorderly conduct.  If ARD does not constitute a favorable
> termination, success in the § 1983 claim would result in parallel
> litigation over whether Petit's activity constituted disorderly
> conduct and could result in a conflicting resolution arising from the
> same conduct.

*Id.*  The Third Circuit reasoned that the plaintiff could not "maintain a § 1983 claim unless

successful completion of the ARD program constitutes a 'termination of the prior criminal

proceeding in favor of the accused.'" *Id.* at 210 (quoting *Heck*, 512 U.S. at 485).  The Third

Circuit ultimately held that the "ARD program [a court-supervised compromise] is not a

favorable termination under *Heck*," and thus the plaintiff's completion of the ARD program

barred his section 1983 First Amendment claim.  *Gilles*, 427 F.3d at 211-12 (footnotes omitted).

*See Fuchs v. Mercer County*, 260 F. App'x 472, 474-75 (3d Cir. 2008).

Recently, in *Hendrix v. City of Trenton*, 2009 WL 5205996, at * 4-5 (D.N.J. Dec. 29,

2009), Judge Wolfson held that, based on the policy purpose and procedural similarities between

the ARD and New Jersey's PTI program, entry in the PTI program does not meet the favorable

termination requirement of *Heck*, consistent with the holding in *Gilles*.  *Hendrix*, 2009 WL

5205996, at * 4-5. *See Bustamante v. Borough of Paramus*, 413 N.J. Super. 276, 287-90 (N.J.

App. 2010).

Consistent with the principles enunciated by the Courts in *Heck*, *Gilles*, and *Hendrix*, the

Court, here, finds that plaintiff's completion of the PTI program does not meet the favorable

termination requirement of *Heck*. Accordingly, his section 1983 unlawful arrest claim is barred

under *Heck* and *Gilles* unless plaintiff can demonstrate that a judgment in his favor on his section

1983 claim "would [not] necessarily imply the invalidity of his conviction. . . ." on the

aggravated assault and resisting arrest charges. *Heck*, 512 U.S. at 487.

> 2. *Whether A Section 1983 Judgment Would Imply The Invalidity of*
> *The State Convictions*

The Third Circuit has recognized that "[u]nder some circumstances, a false arrest claim

may proceed in an action under 42 U.S.C. § 1983 despite a valid conviction." *Woodham v.*

*Dubas*, 256 F. App'x 571, 576 (3d Cir. Dec. 5, 2007) (internal citation omitted). In *Woodham*,

the Third Circuit found that the plaintiff who challenged the validity of the search warrant "on

the basis that a law enforcement agent submitted a false statement" would have to prove as false

those statements about which the agent testified at the plaintiff's criminal prosecution. *Id.* As

such, the Third Circuit held that the plaintiff's success on his false arrest claim would

compromise the validity of his drug possession conviction.

The Court, here, must determine whether the section 1983 unlawful arrest claim

undermines the validity of plaintiff's criminal convictions. *See id.* The Court begins by

analyzing the elements of plaintiff's section 1983 claim for unlawful arrest against the underlying

charges against plaintiff – aggravated assault and resisting arrest.

To state a section 1983 claim for false arrest, a plaintiff must prove that he was arrested

by a state actor, and that he was arrested without probable cause. *Stolinski v. Pennypacker*, 772

F. Supp.2d 626, 645 (D.N.J. 2011) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).  The inquiry is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling*, 855 F.2d at 141.  To prove the absence of probable cause, a plaintiff must show "'that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed.'" *Hare v. Woodhead*, Civ. No. 08-5894, 2011 WL 1748469, at *4 (D.N.J. May 6, 2011) (quoting *Lind v. Schmid*, 67 N.J. 255, 262 (N.J. 1975)).

N.J. STAT. ANN. § 2C:29-2a., Resisting arrest; eluding officer, provides:

> a. (1) Except as provided in paragraph (3), a person is guilty of a
> disorderly persons offense if he purposely prevents or attempts to
> prevent a law enforcement officer from effecting an arrest.. . .
> It is not a defense to a prosecution under this subsection that the
> law enforcement officer was acting unlawfully in making the
> arrest, provided he was acting under color of his official authority
> and provided the law enforcement officer announces his intention
> to arrest prior to the resistance.

N.J. STAT. ANN. § 2C:29-2a.  In *Platt*, District Judge Irenas emphasized that "[t]he 2000 amendment of this section deleted the word 'lawful' before the word 'arrest' in order to 'omit[] the condition that the arrest be lawful and include[] attempts to prevent a law enforcement officer from effecting an arrest.'" *Platt v. Gonzalez*, Civ. No. 09-6136, 2011 WL 2413264, at * 3 (D.N.J. Jun. 9, 2011) (quoting N.J. Assemb. Comm. Statement, 209th Leg., Assemb. B. 1576 (Jan. 24, 2000)) (internal citation omitted).  *See State v. Crawley*, 187 N.J. 440, 464 (N.J. 2006) (Wallace, Jr., J., dissenting).

As such, Judge Irenas found that the plaintiff's success on his section 1983 unlawful

arrest or excessive force claims would not necessarily invalidate his underlying conviction for resisting arrest under *Heck*. Judge Irenas reasoned that "[t]he offense to which Plaintiff pled guilty to does not require a lawful arrest. Therefore, a finding that Plaintiff was resisting arrest can coexist with a finding that the police used excessive force to unlawfully arrest Plaintiff." *Platt*, 2011 WL 2413264, * 3 (citing *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997).[4]

Here, relying on the reasoning of Judge Irenas in *Platt*, this Court finds that plaintiff's recovery, if any, on his section 1983 unlawful arrest claim would not "necessarily imply" his state court conviction for resisting arrest because that conviction did not require a finding of lawful arrest. As such, to answer the question of whether Breen and Holowacz had probable cause to arrest plaintiff (an element of his section 1983 claim) would not result in "parallel litigation over whether [his] [] activity constituted disorderly conduct and [thus] could [not] result in a conflicting resolution arising from the same conduct." *Gilles*, 427 F.3d at 209. Accordingly, the Court concludes that *Heck* does not bar plaintiff's section 1983 unlawful arrest

---

[4] The Court notes that Judge Irenas' conclusion in *Platt* is not inconsistent with the Third Circuit's decision reached in *Marable v. West Pottsgrove Twp.*, wherein the Court found that *Heck* barred the plaintiff's recovery on the false arrest claim. *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 280-81 (3d Cir. 2006). The distinguishing characteristic is that the Third Circuit in *Marable* considered the elements of the underlying resisting arrest conviction under Pennsylvania law, which requires that the arrest be lawful.

In analyzing what effect, if any, the false arrest claim had on the state resisting arrest conviction, the Third Circuit reasoned that a judgment in favor of plaintiff on the false arrest claim "would necessarily imply Marable Jr.'s state court conviction and sentence were unlawful. An award of damages pursuant to the false arrest claim would require a finding that Marable Jr. had been unlawfully detained. Such a finding would be sharply at odds with the fact of Marable Jr.'s conviction under 18 Pa. C.S.A. § 5104 [resisting arrest offense], requiring that the underlying arrest be lawful." *Id.* As such, the Third Circuit found that the District Court correctly granted summary judgment to the defendants on the plaintiff's claims for false arrest, among other claims.

claim.

The Court, however, reaches a different result concerning the effect of the unlawful arrest claim on plaintiff's aggravated assault conviction. N.J. STAT. ANN. § 2C:12-1b., Aggravated assault, provides that a person is guilty of such an offense if he:

> [c]ommits a simple assault as defined in subsection a. (1), (2) or (3) of this section upon: (a) Any law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer.

N.J. STAT. ANN. § 2C:12-1b.(5)(a).  A person is guilty of simple assault if he:

> (1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (2) negligently causes bodily injury to another with a deadly weapon; or (3) attempts by physical menace to put another in fear of imminent serious bodily injury.

N.J. STAT. ANN. § 2C:12-1a.(1)-(3).[5]

Unlike in the context of section 1983 excessive force claims, the Third Circuit has not squarely addressed the issue of whether a simple or aggravated assault conviction necessarily acts as a bar to a section 1983 unlawful arrest claim.  However, other courts in this district and other court of appeals have considered this issue and have reached conflicting conclusions.  *See, e.g.*, *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir.1999) (holding that *Heck* bars false arrest claim when a "conviction for aggravated assault necessarily implies that there was probable cause for his arrest at that point in time"); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995) (holding that *Heck* bars a false arrest claim, when probable cause exists for any charges against the plaintiff

---

[5] Since it is undisputed that no deadly weapon was used in the altercation, the Court concludes that plaintiff was convicted of either attempting to or recklessly caused bodily injury to Breen.  Also, as detailed above, plaintiff did not admit guilty to either charge, and he denies having struck Breen.

and his "proof to establish his false arrest claim, *i.e.,* that there was no probable cause to arrest ... would demonstrate the invalidity of [plaintiff's] conviction"); *Edwards v. New Jersey*, Civ. No. 08-5617, 2009 WL 3261951, at * 4 (D.N.J. Oct. 7, 2009) (finding that the plaintiff's false arrest claim was a "collateral attack" on the pending state criminal proceeding related to the assault and resisting arrest, and thus barred under *Heck*).

In *Edwards*, on a motion to dismiss, District Judge Bumb considered whether the section 1983 false arrest and false imprisonment claims necessarily implicated the ongoing pending state criminal charges for which the plaintiff had not even yet been convicted. *Edwards*, 2009 WL 3261951, at * 4. The Court held that given the unique set of facts before the Court, the plaintiff could not obtain a judgment on these section 1983 claims without invalidating a forthcoming state court conviction. *Id.* The Court explained:

> [T]he probable cause substantiating the arrest and detention was the assault itself. A finding that the arrest lacked probable cause could be based only upon a finding that the assault did not occur, or, in other words, that Plaintiff is not guilty of the crime for which he is to be tried. This sort of 'collateral attack' upon a state criminal proceeding is impermissible under *Heck*. [internal citation omitted]. Therefore, the false arrest and false imprisonment claims cannot go forward until Plaintiff has been acquitted of the state criminal charge.

*Id.* at * 4.

Relying on the reasoning of Judge Bumb in *Edwards*, the Court, here, finds that a judgment in favor of plaintiff on his section 1983 unlawful arrest claim would be barred by *Heck* because it would necessarily invalidate the aggravated assault charge for which he was "convicted" by way of his participation in the PTI program. First, unlike in *Edwards*, here, there is a valid conviction in place. Second, Plaintiff alleges that he never engaged in any threatening

conduct towards Breen or Holowacz, let alone that he struck Breen in the face.  Thus, any

contention by plaintiff that the defendant police officers lacked probable cause to arrest him

would necessitate a finding that plaintiff did not purposely, knowingly or recklessly strike Breen,

a police officer – the basic elements of the aggravated assault charge of which Plaintiff was

convicted.  In other words, a jury would have to find that the assault never occurred, thereby

necessarily implying the invalidity of the assault conviction.  A result inconsistent with *Heck* and

*Gilles*.  Therefore, the Court finds that *Heck* requires dismissal of plaintiff's section 1983

unlawful arrest claim.  Accordingly, summary judgment for defendants is granted as to the

unlawful arrest claim (count one) on that basis.

### C.    Count One: Excessive Force Claim

Defendants contend that Breen and Holowacz are entitled to qualified immunity from suit

because their conduct did not violate plaintiff's constitutional rights that were reasonably known

to exist.  In short, defendants argue that the Court should not question the split second judgment

police officers must exercise during an arrest.  Under the defense of qualified immunity,

"government officials performing discretionary functions are generally 'shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Antoine v. Rucker*, Civ.

No. 03-3738, 2006 WL 1966649, at *7 (D.N.J. Jul. 22, 2006) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).

The qualified immunity analysis is two-fold.  The court must determine: "(1) whether the

officer violated a constitutional right, and (2) whether the right was clearly established, such that

'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation

he confronted.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01) (2001)).

As to the first prong, the Third Circuit has emphasized that it is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007). In resolving this question, the court must consider the facts in the light most favorable to the plaintiff. *Kopec v. Tate*, 361 F.2d 772, 776 (3d Cir. 2004).

As to the second prong, the Court must determine "whether the right that was [allegedly] violated was clearly established, or in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "The Court should *not* grant summary judgment on the basis of qualified immunity when disputed issues of historic fact are 'material to the objective reasonableness of an officer's conduct.'" *Weber v. Rodriguez*, Civ No. 07-2097, 2011 WL 2555358, at *4 (D.N.J. Jun. 27, 2011) (quoting *Curley*, 499 F.3d at 278). As detailed below, this Court finds that there are sufficient disputed historical material facts remaining in the case that a decision on qualified immunity cannot be resolved at the summary judgment stage.

          1.     *Violation of a Constitutional Right*

The Fourth Amendment prohibits the use of excessive force by a police officer when effectuating an arrest. *See Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (internal citation omitted). To prove an excessive force claim as an unreasonable seizure, a plaintiff must demonstrate that the seizure occurred and that it was unreasonable. *Rivas v. City of Passaic*, 365 F.3d 188, 198 (3d Cir. 2004) (internal citation omitted).

Here, plaintiff claims that he was illegally arrested and excessive force was used against him during the course of an illegal seizure and after he was "seized" (i.e., in custody). There is no dispute that Breen and Holowacz seized plaintiff when they arrested him. Rather, the inquiry turns on whether the seizure was unreasonable. The Court must consider whether the two officers' use of force, both pre-arrest and post arrest, was objectively reasonable under the circumstances, irrespective of the officers' underlying motive or intentions. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In determining the reasonableness of a police officer's conduct, the Third Circuit explained:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (internal quotations and citations omitted). "When weighing these factors, courts should evaluate the officers' conduct from the officers' vantage point at the time of the incident. . . ." *Wade v. Colaner*, Civ No. 06-3715, 2010 WL 1490590, at * 7 (D.N.J. Apr. 13, 2010). *See Graham*, 490 U.S. at 396-97.

Defendants argue that no reasonable fact finder could find that the force used to arrest plaintiff was unreasonable. However, viewing the facts alleged in the light most favorable to plaintiff, this Court finds that a reasonable jury could conclude that Breen and Holowacz used excessive force in effectuating plaintiff's arrest and after he was handcuffed and subdued in

22

violation of the Fourth Amendment.

Although there is no dispute that plaintiff had caused a "disturbance" with Teplitz and Balcar, that led to the police's dispatch to the residence, it remains a disputed issue of fact whether plaintiff ever heard Breen, Holowacz or Ms. Murdock order him to keep the door open when Ms. Murdock re-entered the residence.  It is also disputed whether plaintiff tried to close the door in violation of this directive or merely to prevent his cats from escaping as it was his habit to do.  (Ms. Murdock Dep. at 68-69).  There is also a factual dispute as to whether Holowacz used his baton during the struggle with plaintiff to strike him in the face as the police rushed the front door and tried to apprehend him. (Pl. Dep. at 56:3-56:19; Holowacz Dep. at 129:13 - 130-10).  Therefore, if the jury accepts plaintiff's version of the events, and believes his testimony and Ms. Murdock's, it may find that Breen and Holowacz used excessive force when they arrested plaintiff.

Similarly, the Court finds there is a material issue of fact as to whether Breen and Holowacz violated plaintiff's Fourth Amendment rights after they handcuffed and subdued him. Significantly, there is no dispute that plaintiff became compliant once he was handcuffed on the dining room floor.  In his interrogatory answers, plaintiff states that after he was handcuffed face down on the floor, one of the police officers placed a night stick across his throat and pushed his head down so he could not breath.  Ms. Murdock testified that plaintiff tried to scream out: "I can't breath.  I can't breath."  The same officer then kneed plaintiff in the ribs. (Pl. Rog. Ans. # 3 (Exh. M to Norton Cert.); Ms. Murdock Dep. at 72-73).

Ms. Murdock further testified that she then asked officer Holowacz to calm down and touched him on the back.  Holowacz yelled that if she did not get her hand off him, he would

take her "down to the station too." (Ms. Murdock Dep. at 73). Plaintiff's interrogatory answers

and Ms. Murdock's deposition testimony suggest that, after the police officer kneed plaintiff in

the ribs, the two officers lifted him by his cuffed hands. Plaintiff screamed out in pain. Ms.

Murdock yelled at the officers, "Don't hurt him." (Pl. Rog Ans. #3; Ms. Murdock Dep. at 144:15

- 145:1). Plaintiff complained that the handcuffs were too tight, and his fingers were becoming

numb. Breen and Holowacz ignored his complaints. (Pl. Rog Ans. #3).

     Plaintiff also states that in the days following his arrest, imprints left by the handcuffs

were still visible around his wrists; he had bruising and skin rash across his throat; his dentist

confirmed that he had two chipped teeth and "multiple bruises on [his] left and right arms and

across [his] throat;" and his orthopedist noted he had a non-displaced fracture of his ribs. (Luzzi

Cert., at Exhs. A-E).

     In analyzing the defendants' summary judgment motion on the plaintiff's excessive force

claim, the Third Circuit in *Kopec v. Tate*, 361 F.3d 772, (3d Cir. 2004), held that "'the facts [the

plaintiff] asserts, taken in the light most favorable to him, show that [the officer] violated [the

plaintiff's] Fourth Amendment rights.'" *Gattas v. City of Jersey City*, Civ. No. 07-4242, 2009

WL 5216973, at * 9 (D.N.J. Dec. 29, 2009) (quoting *Kopec*, 361 F.3d at 776). The court in

*Kopec* noted that the officer faced "'rather benign circumstances that hardly justified his failure

to respond more promptly'" to the plaintiff's entreaties. *Gattas*, 2009 WL 5216973, at * 9

(quoting *Kopec*, 361 F.3d at 777). The officer "'was not, after all, in the midst of a dangerous

situation involving a serious crime or armed criminals.'" *Id.* (quoting *Kopec*, 361 F.3d at 777).

Regarding qualified immunity, "'it cannot be said as a matter of law that a reasonable officer

would not have known that this conduct was in violation of the Fourth Amendment.'" *Id.*

(quoting *Kopec*, 361 F.3d at 777)

In short, here, based on the testimony of Ms. Murdock, plaintiff, and his treating physicians, a jury could find that plaintiff was deprived of a constitutional right in that Breen and Holowacz used excessive force after plaintiff was handcuffed and subdued. *See Gattas*, 2009 WL 5216973, at * 9; *see also Kopec*, 361 F.3d at 777. Therefore, plaintiff's excessive force claim survives the first step in the qualified immunity analysis.

>    2.    *Clearly Established Right*

The Court turns to whether the violated right was clearly established at the time Breen and Holowacz engaged in the allegedly unconstitutional conduct. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Here, disputed issues of historical material facts exists regarding at least two key events — the police officers' command that the front door of the residence remain open and plaintiff's reason for attempting to close the front door.

Breen states that, in recognizing the threat to Ms. Murdock's safety, he advised plaintiff and Ms. Murdock that the front door had to remain open when she re-entered the house. Despite this order, and Ms. Murdock's reminder to her husband, plaintiff forcefully tried to close the door on Breen and then assault him.

Plaintiff offers a very different account of what happened during that brief encounter. Most notably, plaintiff claims that he did not hear either Breen or his wife order him to keep the door open. In any event, Ms. Murdock testified that neither Breen nor Holowacz advised plaintiff to keep the door open because she had already instructed him to do so. Furthermore, Ms.

Murdock testified that, even as plaintiff began to close the front door, neither officer told him to keep the door open.

Plaintiff testified that when Ms. Murdock entered the house, she passed by him, as he stood by the front door. She also told him she would be right back. She also said something else that he could not hear because the police began speaking simultaneously to plaintiff. While there is no dispute that plaintiff attempted to close the front door *after* Ms. Murdock entered the house, Ms. Murdock testified that he was trying to close the door to prevent their cats from escaping as it was their habit to do so, following the escape of one cat.

While plaintiff admits that he was trying to close the door, he denies catching Breen's foot in the door jab, becoming violent, or striking Breen on the face. Rather, when plaintiff tried to close the door with his right hand, the officers started to scream and "charged the door."

As the Third Circuit has noted, "'[t]he standard for granting or denying a motion for summary judgment does not change in the qualified immunity context.'" *Curley*, 298 F.3d at 282 (quoting *Karnes v. Skrutski*, 62 F.3d 485, 494 (3d Cir. 1995)). "Viewing the facts in the light most favorable to the plaintiff, a court must determine whether the defendant should prevail as a matter of law." *Curley*, 298 F.3d at 282. Here, viewing the facts in the light most favorable to plaintiff, the Court finds that the foregoing disputed facts prevent Breen and Holowacz from prevailing as a matter of law at this stage of the case. *See id.* (concluding that district court erred in overly crediting police officer's version of events without viewing the disputed facts in the light most favorable to the plaintiff, and thus, the district court could not properly find that police officer's conduct was protected under the qualified immunity defense).

Similarly, when viewing the facts in the light most favorable to plaintiff, a reasonable

26

police officer would know that, once plaintiff was lying handcuffed on the ground, he no longer posed a risk to the police officers and no longer posed a risk of flight, and thus, holding a police baton to plaintiff's throat and holding him face down on the floor was excessive and unconstitutional.   *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."). Accordingly, Breen and Holowacz are not entitled to qualified immunity on plaintiff's excessive force claim at this stage. Thus, summary judgment for defendants Breen and Holowacz is denied as to the excessive force claim (count one).

**D.      Count One: Excessive Force Claim (Plaintiff's Cross-Motion for Summary Judgment)**

The Court's conclusion that disputed issues of material fact exist warranting the denial of defendants' motion for summary judgment on plaintiff's excessive force claim applies with equal force to warrant a denial of plaintiff's cross-motion for partial summary judgment on his excessive force claim.  As such, plaintiff is denied summary judgment on the post-arrest excessive force claim (count one).

**E.      Count Three: Respondeat Superior Claim**

Although defendants contend that plaintiff's respondent superior claim is directed against defendants Edgewater and Chief Martin, the Complaint states, "Defendants, Breen and Holowacz, and the Edgewater Police Department are vicariously liable for the conduct of defendants, and John Does 1-15, under the doctrine of respondeat superior" because "[t]he conduct of defendants resulted in the wrongful deprivation of the freedom of Murdock. (Compl., at ¶¶ 34, 35 Count Three).

During oral argument, plaintiff's counsel clarified that the claim is asserted against defendants Chief Martin, Edgewater, and the Police Department only. Plaintiff's counsel also represented that his client would voluntarily dismiss the respondeat superior claim (count three) of the Complaint against these defendants. Yet, in his subsequent letter of September 12, 2011, plaintiff's counsel withdraw the consent to dismiss this claim. As such, the Court considers the merits of the claim against these three defendants based on the legal arguments raised by the parties in their respective briefs.

First, plaintiff offers no evidence in support of these bare boned allegations, let alone address the merits of this claim in his opposition to summary judgment. "'[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.'" *Gattas v. City of Jersey City*, 2010 WL 892187, at * 9 (D.N.J. Mar. 5, 2010) (quoting *Schoch v. First Fid. Bancorporation*, 912 F.2d 645, 657 (3d Cir. 1990). Based on this deficiency, the Court grants summary judgment on the respondeat superior claim (count three) as to Chief Martin, Edgewater, and the Edgewater Police Department.

In any event, New Jersey law does not provide for vicarious liability by a public entity for the intentional torts committed by its employees. *See* N.J. STAT. ANN. § 59:2-10 (public entities are not vicariously liable for their employees' criminal, fraudulent, malicious or willful misconduct); *see also Gattas*, 2010 WL 892187, at * 8. Additionally, "[l]ocal government units are not liable under § 1983 solely on a theory of respondeat superior." *Williams v. Township of West Deptford*, 2008 WL 1809134, at *9 (D.N.J. Apr. 22, 2008). Therefore, an alternative basis exists to grant summary judgment as to the Police Department and Edgewater.

As to any section 1983 individual liability sought against Chief Martin, plaintiff must

demonstrate his personal involvement in the alleged wrongful conduct because individual

liability "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v.*

*Fisher*, 423 F.3d 347, 353 (3d Cir.2005). "A defendant in a civil rights action must have

personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation

of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

omitted). "Personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence." *Id.* (citations omitted). Thus, as plaintiff has not offered

any evidence of Chief Martin's personal involvement in the alleged wrongdoing, summary

judgment is granted as to Chief Martin on plaintiff's respondeat superior claim (Count Three).

### F.      Counts Four and Five: *Monell* Claims for Damages and Injunctive Relief

In count four, Plaintiff alleges that Chief Martin, Edgewater, and the Police Department

are liable for his injuries because they negligently failed to instruct and supervise their

subordinate police officers in the proper application of handcuffs and prevent the police officers'

"malicious acts," against plaintiff and in violation of his constitutional rights.  Plaintiff further

alleges that Chief Martin and the municipal entities established a policy, custom and/or "de facto

pattern and practice of deliberate indifference to the constitutional rights of the residents and

people of the Borough of Edgewater," and in particular plaintiff.  As such, plaintiff seeks

monetary damages for defendants' violations of federal law.  (Compl. Count IV, ¶ 44).

During oral argument, plaintiff's counsel clarified that count five, like count four, is a

Monell claim asserted against Edgewater, the Police Department, and Chief Martin.  Yet, in

count five, plaintiff seeks only prospective injunctive relief.  As plaintiff asserts the same

theories of liability to support of both *Monell* claims (counts four and five), the Court analyzes

29

the merits of both claims together.

      1.    *Unlawful "Policy or Custom"*

Although a municipality may be sued under section 1983, liability cannot lie solely based

on the municipality's employment of a tortfeasor. *Monell v. Department of Social Services*, 436

U.S. 658, 690-91 (1978). Rather, a municipality can only be held liable under section 1983

"when execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. The

*Monell* Court explained:

> Local governing bodies, therefore, can be sued directly under §
> 1983 *for monetary, declaratory, or injunctive relief* where . . . the
> action that is alleged to be unconstitutional implements or executes
> a policy statement, ordinance, regulation, or decision officially
> adopted and promulgated by that body's officers. . . . [Suit can also
> lie based on] deprivations visited pursuant to governmental
> 'custom' even though such a custom has not received formal
> approval through the body's official decisionmaking channels.

*Id.* at 690-91 (emphasis added)

As to plaintiff's allegations of an invidious policy or practice, to establish municipal

liability under section 1983, "a plaintiff must show that an official who has the power to make

policy is responsible for either the affirmative proclamation of a policy of acquiescence in a well-

settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "A plaintiff must

demonstrate that, through its deliberate conduct, the municipality was the moving force behind

the plaintiff's injury." *Williams*, 2008 WL 1809134, at * 9 (citing *Monell*, 436 U.S. at 689).

Usually, one incident is not sufficient to establish a custom that can give rise to municipal

liability." *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Instead,

plaintiff needs to show that responsible officials, such as Chief Martin, were aware of a number

of similar constitutional violations by the Edgewater police officers and knew of ways to prevent them, but "'either deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard.'" *Antoine*, 2006 WL 1966649, at \*12 (quoting *Simmons v. Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991)).

Here, plaintiff points to no evidence that could meet his burden of establishing any unlawful custom that gives rise to municipal liability. In short, plaintiff's unsupported allegations in the Complaint are insufficient to withstand summary judgment on either of his *Monell* claims (count four or five) for damages or injunctive relief based on an unlawful policy or custom.[6]

### 2. *Failure To Train On Proper Use Of Handcuffs*

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under section 1983. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In support of his allegations that the municipal defendants failed to train and instruct its police officers on the use of handcuffs, plaintiff must

---

[6] In opposition to summary judgment, plaintiff relies on the Supreme Court's recent decision in *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S.Ct. 447, 451 (2010), to establish his entitlement to seek injunctive relief in connection with his *Monell* claim (count five). Yet, the holding in *Humphries* merely reiterated the Supreme Court's conclusion in *Monell* that "'[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, *declaratory, or injunctive relief* where . . . the action that is alleged to be unconstitutional implements or executes' a policy or custom." *Los Angeles County, Cal.*, 131 S.Ct. at 452 (quoting *Monell*, 436 U.S. at 690). *Humphries* does not alter the requirement that a plaintiff carry his burden of establishing a causal connection between the alleged "execution of a government's policy or custom" and his alleged injuries. *See Monell*, 436 U.S. at 694. Here, while plaintiff could seek injunctive relief, he ultimately is not entitled to receive it because of his failure to proffer evidence showing this causal connection.

"'identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Antoine*, 2006 WL 1966649, at *13 (quoting *Reitz*, 125 F.3d at 145) (internal citation omitted).

The only evidence produced on this issue is Holowacz's testimony about his training and instruction, including use of force and restraints in accordance with the Attorney General guidelines. (Holowacz Dep. 25:21 - 29:1). Plaintiff acknowledges this testimony but states that Holowacz testified that he recalled only being trained to use the least force necessary. (Holowacz Dep. 29:7 - 32:3; 34:14 -36:16). Thus, according to plaintiff, Holowacz admitted that he never received any additional training on the use of handcuffs after his initial training. (Pl. Sur-reply Bf at 2).

Such testimony, however, does not support plaintiff's theory of liability under *Monell*. Rather, Holowacz's testimony confirms that the defendant officers received training on use of force and restraints for which plaintiff did not offer contrary evidence. Accordingly, Edgewater, the Police Department and Chief Martin are entitled to summary judgment on plaintiff's failure to train claim (counts four and five).

### G.      Defendant Detective Lt. Donald Skidmore

Defendants also move to dismiss Detective Lieutenant Donald Skidmore, a named defendant in the caption of the complaint, but against whom plaintiff does not specifically assert any claims. The court will grant defendants' motion to dismiss Skidmore. The complaint is devoid of any cause of action against Skidmore. Rather, plaintiff lists Skidmore only in the caption without asserting any factual allegations against him or stating any claims against him.

Thus, the complaint fails to satisfy the notice pleading standards, pursuant to FED. R. CIV. P. 8(b).

Additionally, at no time did plaintiff seek leave to file an amended complaint, pursuant to FED.

R. CIV. P. 15(a) or Rule 16(b), to assert any claims against Skidmore.  As such, Skidmore is not

properly plead as a defendant in this case, and will be dismissed with prejudice.

IV.    **CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is **GRANTED,**

**IN PART, AND DENIED, IN PART**.  Specifically, the Court grants summary judgment in

favor of defendants on plaintiff's unlawful arrest claim (count one);  plaintiff's respondeat

superior claim (count three), his *Monell* claim for damages (count four), and his *Monell* claim for

prospective injunctive relief (count five).  As such, defendants' Edgewater, the Edgewater Police

Department, and Chief of Police Donald Martin are dismissed from the case.  The Court also

grants summary judgment to dismiss defendant Skidmore from the case.

Summary judgment, however, is denied as to plaintiff's excessive force claim under

federal law against Breen and Holowacz (count one).  As this Court previously noted, defendants

have not expressly moved for summary judgment on plaintiff's state common law assault and

battery claim against Breen and Holowacz (count two).  Thus, these common law claims remain

in the case.  Finally, plaintiff's cross-motion for partial summary judgment on his section 1983

excessive force claim (count one) is denied.

An accompanying appropriate order will be filed in connection herewith.

MADELINE COX ARLEO, U.S.M.J.

Date:   November 2, 2011

33